Smith, J.
It is claimed by counsel for the plaintiff in 'error that the trial court erred in its rulings as to the admission of the evidence in two particulars, viz: First — In allowing the wife of the defendant, who had been called by him to testify on his behalf, to be cross-examined by the prosecuting attorney as to matters as to which she had not testified on her examination in chief, and on such cross-examination to give evidence which tended to show that the defendant was guilty of the crime with which he was charged; and, second, that the court, over the exception of-defendant’s counsel, allowed several witnesses to testify as to exclamations or statements made by the wife sometime after the homicide, with which defendant was charged, when it was not shown that the husband heard the remark, and, therefore, that- it was but- hearsay, and incompetent on this ground.
The first of these objections involves to some extent the construction to be be given to section 7284, Rev. Stat., which relates to the competency of witnesses in criminal cases. Among other things it is therein provided that- “husband and wife shall be competent witnesses to testify in behalf of each other in all criminal prosecutions. * * * But husband and wife shall not testify concerning any communication made by one to the other, or act done by either in the presence of each other during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness.”
We are of the opinion that when a husband or a wife of a person charged, with and on trial for a crime, is called as a witness by such person to testify on his or her behalf, and is so *264 examined, that such witness occupies the same position that any other competent witness does, and may be cross-examined by the prosecuting attorney in the same manner as might have been done if he or she had not been the husband or wife of the person on trial, except as to confidential communications or acts as pointed out in the statute. The law, of course, is that from motives of public policy, neither husband or wife can be called by the state to testify in such case, but the defendant on trial is entitled to call his or her wife or husband to testify, and he or she then becomes a competent witness, and like any other, with the exception particularly pointed out in the statute. If the defendant does this, and the evidence elicited either on the direct or cross-examination, instead of being favorable to him, shows his guilt, he can not complain or have it excluded, (if otherwise competent), for this reason, or on the ground that the evidence is not in his behalf. This expression in the statute must apply to the right to have the witness testify in the case, and not to the effect of the evidence when given. She does testify in his behalf when he calls and examines her, and if the testimony she gives is damaging to him, it is the result of his own act, precisely as it is when he chooses to testify in his own behalf when charged with crime, as, under section 7286, Rev. Stat., he may do. And the same reasoning which led to the decision in the case of Hanoff v. The State, 37 Ohio St. 178, that when “the defendant offers himself as a witness, and testifies in his own behalf, he thereby subjects himself to the same rules, and may be called on to submit to the same tests as to his credibility' as may legally be applied to other witnesses,” would indicate that the same result should follow when a husband or wife is called to testify under section 7284. By the provision of the Bill of Rights, “ no person shall be compelled in any criminal case to be a witness against himself,” — and yet, as held by the court, he may waive this privilege, and having become a witness, shall be bound to testify, though his evidence criminates him.
*265 But even if we were to hold the law to be, as was declared in several cases in Texas, cited by counsel for plaintiff in er-error, under a statute substantially similar to ours, that on cross-examination of a husband or wife thus produced as a witness, that the prosecuting attorney could not properly inquire as to distinct matters not inquired about in chief, except those tending to test or impeach the credit of the witness, yet we think the rule was not substantially violated in this case. On the direct examination of the wife she had been examined and testified as to what had taken place between her husband and herself that evening, and particularly as to what she called the “ fussing” between them shortly before the killing of Mr. Roller by her husband. This, we suppose, as well as all other evidence given by this witness as to what took place between herself and husband when no one else was present, was incompetent, and should have been excluded. But no objection on this ground was made by either party. On the cross-examination of the witness, she was asked what the fussing was, what was said between them, and particularly, what the husband then said. The counsel for defendant objected to one of the questions asked, as to what he said, “ on the ground that this is cross-examination against defendant, and not on his behalf.” The objection was overruled, and exception taken. The specific ground of exception was not well taken, even for the reason that it was a cross-examination on a matter not examined upon in chief; one other objection substantially similar was made and overruled. These were the only two exceptions on this ground.
The other question raised we esteem to be more serious. The evidence on the part of the state tended strongly to show a willful and unlawful homicide; that of the defendant and his wife tended to show that the former had been drinking, and was quarreling with her in their room that night, to the annoyance of Roller, their landlord, and that finally Roller burst into their room and threatened to and did attempt to throw the defendant from an upstairs window, and that de *266 fendant according to his evidence^ seized a gun standing near, and attempted to defend himself by striking him with it, and that it was accidentally discharged in the scuffle, killing Roller instantly. The evidence on the part of the state further showed that when the gun was discharged several men living in the neighborhood ran into the room, and that one of them immediately struck the defendant a severe blow, and leaving him for a while stunned and semi-unconscious. Several of the witnesses were then allowed to testify for the state that the wife was going about the room exclaiming; “Oh, Jake, I told you not to do it.” This evidence as to the statement of the wife was objected to, but was admitted, and exception taken.
It is clear that this statement of the wife after the transaction was not competent as a part of the res gestae. The only possible ground upon which it might have been received (unless as impeaching evidence on a proper foundation having been laid, 'which was not done), was that it was a statement made in the. presence and hearing of the defendant, and which he was called upon to deny or explain, and that he did not do so. At the time those statements or exclamations of the wife were made, and when the objection of defendant’s counsel was interposed, there had been no evidence which clearly showed that the defendant heard the statement or exclamation of the wife, or that it was really addressed to him, though immediately following in the testimony of the witnesses, is what purports to be the statement of the defendant, and which would appear to be an answer to the wife, to the effect, that he was glad that he had killed him, and that he had made a good job of it. When the witnesses testified to the statement or exclamation of the wife, “counsel for the defend? ant objected to this statement as being hearsay, which objection was overruled, and the defendant.excepted.”
The rule of law on the point of implied admissions from silence is stated in Swan’s Treatise, 174, thus: “Admission may be implied from the acquiescence of a party either in what.is *267 done or said by a third person. Thus, if a statement has been made in the hearing ©f a party, the language of which was fully understood by him, and made under certain circumstances which afforded him an opportunity to deny, correct or explain it, and which called naturally for some reply, and the party was silent, it is fair to presume that he acquiesced in the statement, and it may be given in evidence against him. But if a statement is made on the hearing of a party which he did not fully understand, or under circumstances which did not call for a reply, or his reason for not replying arose from some other cause than silent acquiescence, he is not to be affected by such statements, for then there is no implied admission of their truth by silent acquiescence.” To the same purport is Wharton on Criminal Evidence, sections 679-80.
If there had been no evidence submitted which tended to show that this statement or exclamation of the wife had been heard by the husband, it is obvious that the objection of the defendant to the admission thereof should have been sustained — as if, for instance, the defendant had not been in the same room at the time, or where he could have heard the words. But the evidence shows that he was there and within such distance that he might have heard, if possessed of the ordinary sense of hearing and in the exercise of his faculties; and it further seems to show that he did hear and reply to the remark, and the same witness who testified to her exclamation and his reply, on cross-examination, says, “that these remarks passed between him and his wife.” It is true that this had not been shown so clearly when the objection was made, and ruled upon by the court, but it would seem that the objection was urged too soon, for until it appeared, what answer was made by Haberty, or whether he remained silent, it could not be known whether the evidence was competent or of any value. We think the evidence submitted was such as justified the trial judge in allowing it to go to the *268 jury. If there was any question whatever as to whether the defendant heard or understood the statement of the wife, or that it naturally called upon him for a reply, the jury should have been instructed upon these points, and told that if the defendant did not hear or understand the remark of the wife, that the evidence was of no value and should not be considered by them. The charge is not set out in the bill of exceptions, and it must be presumed that the court discharged its duty.
Arthur Espy and Walter DeCamp, for plaintiff.
Thomas H. Darby, for State.
Since the argument of this case, the counsel for the state have filed a motion suggesting that the record is incomplete,, in this, that the bill of exceptions as signed and allowed by the court, does not truly set forth all of the evidence actually given on this point, with affidavits to show that such is the cáse, and asking to have the bill of exceptions sent to the trial judge for amendment in this respect.
There is no warrant for such a proceeding. If the transcript of the record filed is not a true copy thereof, the reviewing court may require it to be corrected. But here the bill of exceptions is the one actually signed and allowed by the trial judge. It was taken at a former term of the court, and the-time for signing and allowing of a bill has long since passed. The trial judge has now no right to correct the old bill as desired, or sign a new one: Busby v. Finn, 1 Ohio St. 409. But, on the whole case, we see no error prejudicial to the defendant, which was excepted to, and the judgment will be affirmed.